Statement of Facts — On the Merits.
The purpose of this suit is to have it determined who is entitled to $6,000, not yet disposed of, forming part of the assets of the succession of the late Mrs. Harriet L. Watt.
Four of the heirs of the late Charles B. Watt, who was her son, claim the whole amount, in opposition to the claim of other heirs.
Mrs. Harriet L. Watt died in the year 1900. A few days after her death her succession was opened. An inventory was taken the same year, showing assets to the amount of $23,700.92. She left a will. With the exception of a few special legacies, she left her property to her children, all of whom were grown at the time.
The heirs were to receive under ther will equal portions, per stirpes, and not per capita.
Mrs. Harriet E. Watt, her daughter, wife of Charles J. Lewis, was named executrix of the will. She qualified and administered the property.
The predeceased husband of Mrs. Harriet L. Watt, to wit, John Watt, also left a will, dated March, 1867, bequeathing his property to his wife and his five children.
The children were Eliza De Lesane, Anne Louisa Clarisa, Harriet Emily, Edith, and Charles B. Watt, when the father died in the 60’s.
In this will the testator named his son, Charles B. Watt, and others, his executors, and named this son his residuary legatee, after having disposed of nearly all of his property to his children, the daughters named in the will.
Anne Louisa Clarisa Watt, also a major, died some years afterward. Her succession was never opened.
In the year 1882 Robert J. Lewis sold the undivided half of a cotton press and its appurtenances to William Lynd for an amount over $50,000. Part of the consideration was *957 paid cash. In satisfaction of the remainder of the price, the property remained mortgaged in favor of Mrs. Harriet L. Watt and of her daughter, Mrs. Lewis.
The amount due to the daughter, who had departed this life, was $24,000. The indebtedness to her dated from the year 1877. The remainder, also secured by mortgage on the cotton press, was due to the mother.
The Watt claims in matter of this sale at this time were represented exclusively by Mrs. Harriet L. Watt and Hattie Watt, wife of Lewis. None of the heirs (except Mrs. Lewis) signed the deed. The name of Anne Louisa Clarisa Watt appears, as before stated; but the deed was signed exclusively by the persons just named. Anne had departed this life, as before stated.
In the year 1886, before Andry, notary public, William Lynd, Jr., sold the property that he had bought from Henry N. Lewis in 1882 back to Mrs. Harriet L. Watt, widow of John Watt, and Mrs. Harriet Emily Watt, the parties before named.
The four mortgage notes described in the act of 1882 are again described in the act •of 1886, and the obligation before referred to of $15,000 is also again referred to as owned by the two ladies just named.
After deducting the indebtedness of Mrs. Watt to her daughter Harriet Emily, it is stated in the deed of sale by Lynd to them that Mrs. Harriet L. Watt and Mrs. Harriet Emily Watt are the only creditors and owners of the mortgage. They surrendered the notes and canceled them as owners, and also canceled the mortgages.
In the year 1892, before Preot, notary public, Mrs. Harriet L. Watt and Mrs. Harriet Emily Watt sold the same property to Lynd.
In these transactions the name of Anne Watt is not referred to as owner.
In July, 1900, Mrs. Harriet Emily Watt, wife of Chas. J. Lewis, executrix of Mrs. Harriet L. Watt, who departed this life in the early part of 1900, filed a provisional account.
The debts in this account amounted to $1,-281.85; special legacies, $3,600; and $2,679.43 were credited to each of the heirs. Total, $10,717.92 to the heirs.
Charles B. Watt; his sister, Mrs. Sorette Watt, wife of Wallace; Maggie Watt, wúfe of O. Stockett, another sister; • Leonard B. Watt; the minor, Henderson, heir at law of Charles B. Watt; and Daniel Wheeler, together with the Wheeler heirs, children of Eliza De Lesane Watt, wife of Josiah Wheeler, and a daughter of Mrs. Harriet L. Watt —alleged owners of one-half, opposed the account on a number of grounds.
Some time after this opposition had been filed, the account was homologated in so far as not opposed, and thereafter the matter of partition was referred to Mr. Lamar C. Quintero, attorney at law and notary public. The opposition to the principal account before referred to remained of record and never was tried.
There was no partition made. While the matter of partition was before the notary, petitions were addressed to the notary by the opponents, who claimed certain rights.
We will state here that in one of the papers addressed to the notary petitioners (the opponents just above named) state: That Mrs. Harriet L. Watt held mortgage notes belonging to her late daughter, Anne Louisa Clarisa Watt, upon which she collected $24,-000, by purchasing an interest in the Virginia Cotton Press, the cotton press in question.
That one-fourth of the amount was the property of the children of Charles B. Watt, and that in consequence her succession is indebted to the succession of Charles B. Watt for $6,000, its share in the mortgage notes; the shares of the other heirs having been paid to them by Mrs. Watt in the year 1892. And that if it should be claimed that the *959 $24,000 mortgage notes were the property of Mrs. Harriet L. Watt, and not of Anne Louisa Clarisa Watt, then that Mrs. Lewis and Mrs. Howcott had received an amount in excess of their respective shares.
The position taken hy the executrix through counsel is that these papers addressed to the notary are not a judicial demand addressed to a court, and that they cannot interrupt prescription, nor form the basis of a judgment.
We will state here that these petitions before the notary and addressed to him can scarcely be considered as part of the pleadings here, although they have at times been referred to in that light.
On April 17, 1907, parties in interest made the following agreement:
“It is agreed- that there is on hand for distribution $25,499.97, with 2 per cent, interest thereon from November 1, 1902.
“It is agreed that the first six items of the final account, March 31, 1903, are correct, aggregating $2,076.S5. It is agreed that all other items shall be stricken from the account, including the collation claimed from the heirs of Charles B. Watt and heirs of Mrs. Eliza Watt Wheeler, and including the two items, of $10,-275 each, for which Mrs. H. E. Lewis and the heirs of Mrs. Mary Edith Watt Howcott are placed on the account as creditors.
“It is agreed that the amount on hand, less the above-recited charges, amounting to $2,076.-85, and less the sum of $0,000, shall be immediately distributed as follows: To heirs of Mary Edith Watt Howcott, one-fourth; to Mrs. Hattie E. Watt Lewis, one-fourth ; to heirs of Eliza Watt Wheeler, one-fourth; to heirs of Chas. B. Watt, one-fourth.
“The amount of $6,000, above referred to as not to be distributed, is to remain in court to await the decision of the claims of the heirs of Chas. B. Watt. Therefore the right of the heirs is reserved to offset this claim for $6,000 by any legal claim for collation which they may have against the heirs of Chas. B. Watt; but it is distinctly agreed and understood that in no case shall such claims for collation exceed the aggregate amount of $6,000, which is the same $6,-0C0 above referred to.”
On the same day judgment was rendered and signed, carrying the agreement into effect.
In November following Harley A. How-cott, Edith Howcott, Wm. H. Howcott, Jr., and Wm. PI. Howcott, Sr., tutor of Gladys Howcott, heirs of deceased Mrs. Watt How-cott, by right of representation of their predeceased mother, Mrs. Edith Watt Howcott, and Daniel Wheeler, Joseph Wheeler, Jr., Vivian Bradford Wheeler, Plattie De Lesane W7heeler, and Bessie Watt Wheeler, heirs of deceased, Mrs. Harriet L. Watt, by representation of their predeceased mother, Mrs. Jo-siali Wheeler, and Mrs. Harriet Lewis, individually, as. heir of Mrs. Harriet L. Watt, and as executrix, filed an exception to the claim of John B. Watt and the other heirs of Chas. B. Watt, who claimed to be the creditors of the succession in the sum of $6,-000, and interposed the plea of prescription to this claim of three, five, and ten years.
On March 31, 1903, the final account and tableau of distribution was filed by the executrix.
On April 14th of the same year John Watt, his sister, and two brothers filed opposition to the final account. They did not pray to be recognized on the account as creditors, nor did they bring up the question of collation in this opposition.
On the trial of the opposition to the final account, only one witness, the husband of one of the heirs deceased, W. A. Howcott, was called by John Watt and those of the heirs of Charles B. Watt, who jointly opposed the final account.
A number of letters written by this witness are copied in the transcript and are before us. Learned counsel for opponents state that the testimony of this witness, read in connection with these letters, leaves no doubt of the incorrectness of the judgment appealed from. We have not found either or both as conclusive as stated. This witness stated that Anne Watt’s money was lost in speculation and that she left nothing — had no succession to open.
It is said on the part of the opponents that, *961 if the loss tools place as stated by this witness, it was after the death of Anne Watt, and after her mother had taken possession of her property, and conyerted it into money, and loaned the money to one of her sons-in-law; that it did not affect the liability of Mrs. Watt; and, in addition, it appears that the money returned into her funds when real estate was sold.
Learned counsel for opponents also take the position that the $6,000 given by Mrs. Watt to each of her daughters was not part of their estate, and that this is shown by the emancipation proceedings of record; that the partition of the estate to her two daughters was given at a certain amount, and that this they received, and more, from Mrs. Watt, independently of the $6,000 advances; that children must be treated alike.
The witness among other things testified that he knew that Charles B. Watt, the ancestor of the opponents, received it, referring to the $6,000, before the year 1892.
This witness also testified that each heir was to receive $25,000, and that his own wife received under her father’s will — that is, under John Watt’s will — and that the $6,000 and other sums which he collected were amounts due on this amount of $25,000, part of which amount was from the father’s estate.
The commercial firm with which Charles B. Watt was connected failed, and left him in embarrassed circumstances, we gather.
The witness states, further, that Mrs. Harriet L. Watt gave her son, Charles B. Watt, $50 per month for several years to enable him to support his family; that he was largely indebted to his mother; that a great many judgments were paid by the mother for him. He refers to a number of debts that were paid. Funeral expenses and other expenses all were paid by Mrs. Harriet L. Watt.
Discussion and Judgment.
It is made evident by the agreement in question among the heirs that the issue is limited to the claim for $6,000.
The contention of the opponents is that about the year 1882 the late Harriet L. Watt had $24,000 for her daughter, Arme Watt.
The proof is not conclusive upon this point.
We have given some attention to the different amounts constituting the assets of her succession. These, together with the sales and resale of the cotton press property, are a fair criterion of her means. Harriet L. Watt was not worth over $40,000; even less. On this subject we began by taking note of the inventory, also'of the amount of the succession as shown by the provisional account, and the amount of the assets as shown by the final account. We have also considered the cotton press deals. They do not prove that they were very profitable. They added little to her stores.
If the will 'of the late John Watt is to be taken as a basis (and it certainly should, as it is copied in the transcript as evidence in the case), it was not possible for Mrs. Harriet L. Watt to pay very much of the legacies her husband left. He by this will bequeathed his property to his daughters, five in number, in equal shares. He gave nothing to his son; but in a subsequent clause of the will he named him the residuary legatee.
The witness before named, the only witness for the opponents, testified that $25,600 was the legacy of each heir. Doubtless his son, the residuary legatee, received an equal amount. It follows that the estate must have amounted to at least $150,000.
Manifestly this large amount was paid from the property of that succession, and not by Mrs. Harriet L. Watt. ■
It may be — indeed, there is no doubt— that there were balances left which she partially met from time to time as best she *963 could. When the cotton press was sold, she paid something on these, legacies. We infer that before that time there had been something paid on these legacies. It appears that when the cotton press was sold $6,000 was paid one of the heirs, to wit, JMrs. I-Iowcott.
It does not appear with sufficient certainty that at that time the representatives of Charles B. Watt were entitled to a similar amount.
Upon this theory, Anne Watt must have received about $25,000 from the succession of her father.
But it seems that she had spent all of it. The witness in question testified that she lost this sum in a cotton venture.
If she did, and that is the testimony, as it was not shown that she had other property, it is not to be presumed that Mrs. Harriet L. .Watt was indebted to her at the date that the cotton press property was1 sold. Not being indebted, the representatives of Charles B. Watt had no claim against her for the amount. It is not because other heirs received $6,000 partly or entirely from the proceeds of the cotton press property that it can be inferred that these opponents were entitled to a similar amount from these proceeds.
Price of the Cotton Press.
In the first of these sales — that is, to Lynd, Jr. — the deed secured the amount due to the heirs of Anne Watt. In the second and third sales of this valuable property, Mrs. Watt and her daughter, Eliza Lewis, alone appear as parties to the deed. If the heirs had been concerned, it is not probable that they would have allowed her to sell this property and not account to them for some of the amount due. Moreover, in this deed Mrs. Watt positively declares that the whole amount referred to in the mortgage, including the mortgage originally in favor of Anne Watt, was her property, which confirms the statement of the witness before named that Anne Watt had lost her heritage and that her mother owed her nothing.
It may well be that the money was paid to Anne Watt, either by the representative of the succession of her husband, John Watt, or by Mrs. Watt, and that she lost it, and that the mortgage in question, evidenced by negotiable notes, transferable by delivery, passed to Harriet L. Watt.
This is not the only corroborating evidence. It appears that Charles B. Watt was not successful in business. He was overtaken by misfortune. His firm failed, and he was in extremely embarrassed financial circumstances. A number of debts were paid for him by his mother. She, in addition, gave money to his family to aid them in their struggling poverty. It is not probable that these amounts would have been looked upon as gifts (as they were) if the mother had been indebted to her son in the amount of $6,000. It evidently, considered from every point of view, was not an inheritance due by the mother. It never was claimed as such, save in argument and in the petitions addressed to the notary public, who was directed to make a partition of the property; petitions that can scarcely be considered as part of the pleadings, as they were not addressed to any court.
Onus of Pleading and ProoL
This rested, under the facts of the case and the issues as presented, with the opponents. They were not complete. The testimony having been admitted without objection, the issues may to an extent be considered; but it remains that the evidence does not sustain the claim. All the testimony copied in the transcript of a date anterior to the last trial on the application to homologate the final account is favorable to the executrix and her coheirs; that is, those coheirs who do not oppose the final account.
I The only witness of the opponents leaves *965 the issues, to say the least, in a condition of douht In other words, the opposition is not ■sustained by it.
Collation.
We do not think that in this case it would be possible to order the heirs to collate. We are not of opinion that they are entitled at .all to collation, for the obligation as to collating is confined to children or grandchildren succeeding to their mothers and fathers and ■other descendants. Rey. Ciy. Code, art. 1227.
The mother does not fall within the terms of the article, even if she received the amount, which is not conceded, in view of the testimony to which we have before referred.
Prescription.
Learned counsel for opponents states that prescription was not passed upon by the district court.
Be that as it may, it may be considered before this court, even as an original question, .if there is no cause to remand the case in order that countervailing proof of acknowledgment, suspension, or interruption might be •shown. That objection has no merit We pass it without further comment.
Appellee joined issue on appeal, and asked for an amendment of the judgment by substituting the name of Harriet E. Lewis to the name of Harriet E. Watt, and that the judgment be accordingly amended.
By reason of the law and the evidence and the foregoing reasons being in favor of the .executrix and her coheirs who do not oppose •the homologation of the account, it is order•ed, adjudged, and decreed that the judgment .appealed from be amended in accordance with the prayer of appellee, and that, as ■amended, the judgment appealed from is affirmed.
Costs of appeal to be paid by the appellant.